Ainsworth v. The State.

———•———

## AINSWORTH v. THE STATE.

HOUSE OF REFUGE.—*Board of Commissioners.*—*Rules and Regulations.*—The board of commissioners of the house of refuge for the correction and reformation of juvenile offenders, with the approval of the Governor, have power to make rules and regulations in regard to the admission of offenders, so as to require a letter of application giving proper information in regard to the infant whose admission is asked, and also an examination by a respectable medical practitioner as to the physical and mental condition of such person; and the superintendent may refuse to receive an offender until such rules are complied with.

SAME.—*Contempt.*—The refusal to admit a boy charged with a criminal offence, and ordered to be committed to said institution by the judge of a court, until such rules are complied with, is not a contempt of court.

From the Marion Criminal Circuit Court.

*R. D. Doyle*, for appellant.

*C. A. Buskirk*, Attorney General, and *J. M. Cropsey*, Prosecuting Attorney, for the State.

DOWNEY, J. - This was a proceeding against the appellant for contempt.

On the 17th day of March, 1875, James Shannon, charged with larceny, was ordered by the criminal court to be committed to the house of refuge until he attained the age of twenty-one years, unless sooner discharged by the board of commissioners of the institution. On the 29th day of March, 1875, an affidavit was filed in said court, of Alfred Travis, a deputy sheriff of Marion county, that on the 20th day of March, 1875, he tendered the said Shannon, with a certified

copy of the order of commitment to the appellant, as superintendent of the house of refuge, who refused to receive him. The appellant, as such superintendent, appeared in court, and made answer as follows:

"Comes now said defendant, and makes his answer, showing cause why an attachment for contempt of court should not be granted in the matter wherein the affidavit made by Alfred Travis, on the 29th day of March, 1875, has been filed, and on oath, says that he is the superintendent of the house of refuge for the correction and reformation of juvenile offenders, as stated in said affidavit of said Travis, and was such superintendent on the 20th day of March, 1875; that he was not present in person at the time when said Travis made the application for the admission into said house of refuge of said James Shannon, as stated in said affidavit of said Travis, but that on said day and occasion had left in charge of said institution a subordinate officer thereof, named Thomas B. Westendorf, with instructions and authority to act in the premises, as to the admission of inmates, according to law, into said institution, for and in behalf of this affiant; and that said instructions to said Westendorf were, that before an infant should be admitted into said institution there should be a letter of application for admission into said institution signed by the person or officer having the infant in charge, stating certain particulars and facts as required in section 5 of the printed regulations adopted by the board of control of said institution, with the approval of the Governor of said State; and that there should also be presented and had the certificate of a respectable medical practitioner, showing that he had examined said infant, and answering certain questions in reference to the physical condition of said infant, as prescribed in section 6 of the printed regulations above named; a copy of which regulations is filed herewith, as a part of this answer, marked 'exhibit A.'

"Affiant further states, that he is informed and believes that the said Westendorf, acting in conformity with said instructions and regulations, declined to admit said Shannon into

said institution, for the reason that sections 5 and 6, and the requirements thereof, were not complied with, in this, that the said Travis produced no application and no certificate of medical examination of said infant to said Westendorf, as required by the sections aforesaid.

" Affiant further states that afterward, and after said infant had been returned in the custody of said Travis to the jail of Marion county, there came a certificate of the medical examination of said infant on a subsequent day.

" Affiant further states that no disrespect whatever has been intended on his part toward the authority and dignity of this honorable court, but that he considered, as he still does, that said regulations above referred to ought to be followed and obeyed by him, as they were adopted by the board of control of said institution, and approved by the Governor of the State, under the provisions of the statutes relating to said institution.

" The affiant begs to refer also to a letter from the Governor of the State, not on file, upon the matters involved in such admission of infants, to show this court that no disrespect has been intended toward its authority, a copy of which letter is filed herewith; wherefore, affiant prays to be discharged, and for all proper relief."

The court, on a demurrer to this answer, held the same insufficient, awarded an attachment, and, on the hearing, adjudged appellant guilty of contempt, assessed a fine against him, and rendered judgment therefor, with costs.

The sustaining of the demurrer to the answer is the only error alleged.

The regulations on the subject of the admission of boys into the institution, to which reference is made in the answer, are as follows :

" Sec. 2. Before any infant shall be conveyed to the house of refuge, the person or officer having him in charge shall address to the superintendent of the institution a letter of application for the admission of such infant into the institution, and said infant shall not be sent to the institution until

a reply has been returned by the superintendent, stating that he can be received; said letter of application shall conform in substance to the requirements of sections 5 and 6 hereof.

" Sec. 5. The letter of application for admission into the institution must be signed by the person or officer having the infant in charge, and must state the following particulars, viz. :

" 1. The full name of the infant, his age, and, if possible, the day and year of his birth.

" 2. The father's name, and whether dead or living, and, if living, his place of residence; also the mother's name, and whether dead or living, and if living, her place of residence; also the occupation of the parents.

" 3. Whether the boy has any other near relatives than his parents, and where they reside.

" 4. Whether he can read, write, and cipher, or do either, and what schools he has attended, if any.

" 5. What business, if any, he has been employed in.

" 6. Of what offences he has been accused, and how long it is believed that he has been addicted to the commission of such offences.

" 7. By what officer or authority he is ordered to be committed to the house of refuge, whether upon the complaint of the parent, guardian, township trustee, or upon the complaint of some other person, and if he is committed under the provisions of the tenth section, state under which of the specifications of that section he is committed.

" 8. Whether he is to be sent at the public expense, or at the expense of the parent or guardian.

" Sec. 6. The boy whose admission is sought must be examined by a respectable medical practitioner, who shall certify as to his health according to the following form, viz. :

" Has the boy perfect vision ?

" Has he the use of all his limbs?

" Is he sound of intellect ?

" Has he sufficient bodily strength to receive instruction ?

" Has he any tendency to scrofula or consumption ?

" Is he perfectly free from any cutaneous disorder?

" Is he subject to epileptic or other fits ?

" Has he had the small-pox or cow-pox ?

" Has he been vaccinated ?

" I hereby certify that I have examined ———— ————,
application for whose admission to the house of refuge is about
to be made, and that the above answers to the foregoing ques-
tions are, to the best of my knowledge, judgment, and belief,
correctly made."

The clerk of the circuit court must certify to the genuine-
ness of the signature of the medical examiner, and that he is
a reputable practitioner resident in the county.

It is conceded by the demurrer to the answer that the regu-
lations were made by the commissioners of the institution and
approved by the governor.    The question is, had the commis-
sioners power to make the regulations ?   The fifth section of
the act for the establishment of the institution reads as fol-
lows :

" Said commissioners may, with the approval of the gov-
ernor, appoint a suitable superintendent of said institution,
and all necessary subordinates, not exceeding a number to be
fixed by the governor, and fix their salaries, and shall have
power, with the approval of the governor, to make and enforce
all such rules, regulations, ordinances, and by-laws for the gov-
ernment and discipline of said institution as they may deem
just and proper."    3 Ind. Stat. 299.

The second section of the act declares, that " the general
supervision and government of said institution shall be vested
in a board of control, to consist of three commissioners," etc.

The tenth section is as follows :

" Whenever said institution shall have been so far completed
as to properly admit of the reception of youths therein,
the governor shall make due proclamation of that fact, and
thereafter it shall be lawful for said board of commissioners to
receive into their care and guardianship infants under the
age," etc.

The infant in this case would seem from the meager state-

ment in the record to have been committed under the twelfth section of the act, ·upon the recommendation of the grand jury.

The object and purposes of the institution, according to the title of the act, are "the correction and reformation of juvenile offenders." The State has provided other institutions for those who are insane, blind, deaf and dumb, etc.

Counsel for the State submit that the commissioners can only adopt rules, etc., for the government and discipline of the institution, and that no power is given to them to adopt rules for the admission of inmates to the institution; that there is a great difference between the government of the institution and the admission of inmates; and that the superintendent can only govern the institution according to the rules prescribed by the commissioners.

We are not willing to admit that the commissioners, or the officers of the institution acting under their regulations, have no discretion whatever as to the persons who shall be admitted to the institution. The capacity of the institution has been and is such as to make it impossible to receive all whose admission is sought, and hence the folly of carrying a boy to the institution and demanding his admission, without previously ascertaining that it is possible to admit him. This is one reason, and a sufficient one, it seems to us, why the second regulation above set forth should exist, and why it should be complied with before the boy is carried to the institution.

The institution may not be provided with a room for every boy, but may be compelled or prefer to group them together in families in the same house, with a common dormitory, wash room, etc., under such circumstances that diseases, infectious or contagious, may be readily and rapidly communicated from one to another. May not the commissioners adopt reasonable regulations to enable them or the superintendent to ascertain whether the boy whose admission is sought has any such disease? If they may not, on such account, exclude the boy from the institution, they may, at least, by this means, enable

themselves to know whether or not he is fit for intimate association with the other inmates.

It may be desirable or necessary, for other reasons, to classify the boys in the institution, with reference to their age, their advancement in education, and in business or mechanic arts, the crime to which they are addicted and with which they have been charged, and whether they are wholly or comparatively innocent of crime, or greatly hardened therein. Other reasons might be assigned why these regulations should exist, and why they should be complied with.

We are of the opinion that the commissioners and the governor had the power to make the regulations in question, and that the superintendent was not guilty of any contempt of court in refusing to receive the boy Shannon without a compliance therewith.

The judgment is reversed, and the cause remanded, with instructions to overrule the demurrer to the answer.