## 50262. JONES v. STATE OF GEORGIA.

WEBB, Judge.

The Department of Human Resources, successor agency to the Department of Family and Children Services (Ga. L. 1972, pp. 1015, 1046, ch. 12), operates regional youth development centers to provide, inter alia, juvenile courts a place for detaining juveniles prior to their adjudication in juvenile court. The Macon Regional Youth Development Center is located in Bibb County and serves the counties of Bibb, Crawford, Houston, Macon, Peach, Lamar and Upson. Roy Jones, appellant here, is employed by the department as assistant director of the Macon center.

In October, 1974, one of the furnaces at the Macon

center exploded and a gas company representative turned off the gas to that furnace and another which also appeared in poor condition. As a result two of the four wings of the center were left without heat. On October 24 Jones, along with his supervisors, determined that, because of the lack of heat at a time when the inside temperature was approximately 40 degrees, the two wings were not fit for the children and were in fact hazardous to their health. The two wings without heat were accordingly closed, and the remaining two wings of the building became overcrowded.

Because of this crisis at the Macon center it was determined that, in accordance with departmental policies and regulations, additional children could not be accepted at that facility but that special arrangements would be made for other centers operated by the Department to make space available to service the juvenile courts in the seven-county area. Accordingly the Department determined that space was available in nearby centers and contacted staff at those centers to arrange for the space. Jones was instructed by his superiors on the evening of October 24 not to admit additional children to the Macon center but to explain that girls could be transported to another center in Macon and that boys could be transported to the Sandersville or Milledgeville centers, both of which are within sixty miles of the Bibb County courthouse.

Early the next morning Jones talked to the probation officer of the Bibb County Juvenile Court and explained these alternate plans, and the probation officer stated "that he would talk to the Judge about it. Then he called me [Jones] around 11:00 o'clock and told me that the Judge would not accept this plan," and stated that he had four boys to deliver under detention orders to the Macon center. Immediately following this conversation Jones sought advice from his superiors in Atlanta and from the Attorney General's office. The probation officer called again and said that he was on his way, arriving at the center with the four boys shortly after 12:00. He waited at the door for 10 to 15 minutes while Jones waited for and then received instructions to admit the boys, following which Jones immediately followed the instructions given

him and admitted the boys to the center.

On October 28 the probation officer filed a petition in the Bibb County Juvenile Court alleging that Jones was in contempt of court because of the delay in admitting the boys to the center. A hearing was held; Jones was found to be in contempt "for failure to abide by orders of this Court" and sentenced to 20 days in jail; the sentence was suspended; his application for discharge was denied; his motion for supersedeas was granted; and he now appeals to this court. *Held:*

We reverse. One of the agreed-upon questions presented for decision, which we find dispositive, is whether the Department of Human Resources may establish policies governing its regional youth development centers so that a Departmental employee may not properly be found in contempt of court for failing to admit juveniles to a facility where he is following Departmental policy. This is a question of first impression in this state, and authority from other jurisdictions is scant. See 8 ALR3d 657, 663 § 4.

The closest case in point is Ainsworth v. State, 49 Ind. 562. In that case a juvenile had been charged with larceny and ordered by the criminal court to be committed to the house of refuge. An affidavit was filed in that court by a deputy sheriff stating that he had tendered the juvenile, with a certified copy of the commitment papers, to the superintendent of the house of refuge who refused to admit the juvenile and who was thus in contempt of court. The superintendent filed his answer stating, inter alia, that the juvenile was denied admission in accordance with certain regulations of the board of control of the institution and "that he considered, as he still does, that said regulations above referred to ought to be followed and obeyed by him, as they were adopted by the board of control of said institution, and approved by the Governor of the State, under the provisions of the statute relating to said institution." The criminal court, on a demurrer to this answer, held the answer insufficient, issued an attachment and, on the hearing, adjudged the superintendent guilty of contempt and assessed a fine against him.

On appeal to the Indiana Supreme Court, the state

contended that the commissioners of the institution had no power to adopt rules for the admission of inmates, but only for the government thereof under statutes empowering the commissioners, with the approval of the Governor, to make and enforce all such rules and regulations for the government and discipline of the institution as they deemed proper. The Supreme Court rejected this contention and reversed, stating that "We are not willing to admit that the commissioners, or the officers of the institution acting under their regulations, have no discretion whatever as to the persons who shall be admitted to the institution. The capacity of the institution has been and is such as to make it impossible to receive all whose admission is sought, and hence the folly of carrying a boy to the institution and demanding his admission, without previously ascertaining that it is possible to admit him." Ainsworth, supra, p. 567.

We find the Ainsworth case persuasive in both the result reached and the approach taken. The Indiana Supreme Court did not conceptualize the commitment order as standing alone or having a life of its own, as might be done with other orders such as injunctive orders, but reviewed the order in context with the statutes relating to the institution and with the regulations issued pursuant thereto. We, likewise, find that the detention orders here cannot be reviewed apart from the statutes providing for the system of juvenile detention, and that the allegedly contumacious conduct in the instant case must be reviewed in the context of the system of juvenile detention in this state in order to determine whether the conduct falls within the contempt statutes, Code Ann. § 24A-3601, and Code § 24-105. We pass, then, to a consideration of that system.

The Juvenile Court Code grants authority to the juvenile courts to determine, within stated limits, whether a child needs to be detained pending adjudication. Code Ann. § 24A-1401. If detention is found necessary, a child alleged to be delinquent may be detained only in: "(1) a licensed foster home or a home approved by the court; (2) a facility operated by a licensed child welfare agency; (3) a detention home or center for delinquent children which is under the direction or

supervision of the court or other public authority or of a private agency approved by the court; (4) any other suitable place or facility, designated or operated by the court; or (5) any appropriate place of security, only if the facility in paragraph (3) is not available and the detention is in a room separate and removed from those for adults and it appears to the satisfaction of the court that public safety and protection reasonably require detention and the court so orders." Code Ann. § 24A-1403 (a).

The four detention orders here are on printed forms and were entered pursuant to these sections, and the last paragraph of each provides: "It is further ordered that the place of detention shall be the Macon Regional Youth Development Center." Nowhere in the Juvenile Court Code are the juvenile courts granted the power and authority to supervise and control all the various detention facilities enumerated in § 24A-1403 (a). To the contrary, subsection (3) explicitly recognizes that "a detention home or center for delinquent children [may be] under the direction or supervision of the court *or other public authority . . .*" (Emphasis supplied.)

The Department of Human Resources, pursuant to the Children and Youth Act (Code Ann. Ch. 99-2), "is *authorized* and empowered, through its own programs . . ., to establish, maintain, extend and improve throughout the State, *within the limits of funds appropriated therefor,* programs that will provide: . . . (c) Services to courts, *upon their request,* as follows: . . . (2) Provide shelter or detention care for children prior to examination and study or pending court hearing; . . . (d) Regional group care facilities for the purpose of: (1) Providing local authorities an alternative to placing any child in a common jail; (2) Shelter care prior to examination and study or pending hearing before juvenile court; (3) Detention prior to examination and study or pending hearing before juvenile court; (4) Study and diagnosis pending determination of treatment or hearing before juvenile court." Code Ann. § 99-211 (c, d). (Emphasis supplied.)

The Macon center is a facility established pursuant to this authority and, as previously noted, is operated by the Department. The Board of Human Resources is

required to establish "rules and regulations for the government, operation and maintenance of all training schools, facilities and institutions now or hereafter under the jurisdiction and control of the board" (Code Ann. § 99-206 (b)), and the commissioner and his delegates are required to administer all institutions in accordance with the policies, rules and regulations of the board. Code Ann. § 99-207.

It is thus clear that the Department of Human Resources has the authority and responsibility to establish the policies and standards governing regional youth development centers, and the contention of the state that the several juvenile courts are to determine whether a department facility is up to standard is clearly erroneous. It was undisputed below that the four boys were initially refused admittance to the center because of the overcrowding which had resulted from the failure of the heating system. In attempting to prevent further overcrowding, Jones, as instructed, was exercising the statutory authority of the Department and was following Departmental standards by refusing to admit additional children.

If those standards are to have any meaning, the department must be able to reject children at a particular facility even though detention has been ordered in that facility by a juvenile court. Otherwise the department has lost effective control of its own institutions, and its standards are meaningless. Allegiance to such standards is not disrespect for a particular juvenile court but is allegiance to those laws establishing the juvenile detention system which authorized the juvenile court to order the boys detained at the department's facility in the first instance. The department must operate detention facilities within the limits of available appropriations, and there is no mandate that the department guarantee all bed space desired by the juvenile courts. Juvenile Court Code § 24A-1403 (a), enumerating alternative authorized places of detention, contemplates otherwise.

Here Jones and the department made every effort to serve the juvenile court during this time of crisis, and the court was put on notice that space was not available for the four boys and that alternate places of detention had

been arranged for. The juvenile court was fully authorized to certify the costs of transportation to the alternate facilities as a charge upon county funds (Juvenile Court Code § 24A-3401 (5)), or, if the court chose not to accept the alternate facilities of the department, detention could then have been ordered in any of the other places enumerated in § 24A-1403 (a). Nonetheless the court chose to reject the offer of the department, ignored its other alternatives, ordered detention at the Macon center and, by means of this contempt proceeding, has effectively gained control over the center. Were this to be permitted, the juvenile courts of the other six counties served by the center could assert control in like manner, and the resulting competition among the various courts for space in the center would result in chaos. However, the law places such control in the Department of Human Resources as successor to the Department of Family and Children Services, and it was a gross and flagrant abuse of discretion, and clear and manifest error, for the court to pursue this course and hold Jones in contempt of court. Paraphrasing Ainsworth, supra, "The capacity of the institution was such as to make it impossible to receive all whose admission was sought, and hence the folly of carrying the boys to the institution and demanding their admission, having previously ascertained that it was impossible to admit them."

*Judgment reversed. Bell, C. J., and Marshall, J., concur.*

ARGUED FEBRUARY 3, 1975 — DECIDED APRIL 8, 1975 —
REHEARING DENIED APRIL 24, 1975 —

*Arthur K. Bolton, Attorney General, Robert S. Stubbs, II, Executive Assistant Attorney General, Don A. Langham, Timothy J. Sweeney, Dorothy Y. Kirkley, Assistant Attorneys General,* for appellant.

*Fred M. Hasty, District Attorney, Walker P. Johnson, Jr., Thomas H. Hinson, Assistant District Attorneys,* for appellee.